**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**TRACEY L. WHIFFEN,**

                **Plaintiff,**

                v.

**CAROLYN W. COLVIN,**
Commissioner of Social Security,

                **Defendant.**
_____

**5:15-cv-808
(GLS)**

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Olinsky Law Group<br>300 S. State Street<br>Suite 420<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ. |
| **FOR THE DEFENDANTS:**<br>HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261<br><br>Steven P. Conte<br>Regional Chief Counsel<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | ANDREEA L. LECHLEITNER<br>Special Assistant U.S. Attorney |

**Gary L. Sharpe
Senior District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Tracey Whiffen challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Whiffen's arguments, the Commissioner's decision is affirmed and the complaint is dismissed.

## II. Background

On July 3, 2012, Whiffen filed an application for DIB under the Social Security Act ("the Act"), alleging an onset date of August 2, 2004. (Tr.[1] at 68, 142-43.) After her application was denied, (*id.* at 68-76), Whiffen requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 88-89), which was held on November 20, 2013, (*id.* at 35-67). On April 25, 2014, the ALJ issued an unfavorable decision finding Whiffen not disabled and denying the requested benefits, (*id.* at 17-34), which became the Commissioner's final determination upon the Appeals Council's denial of review, (*id.* at 1-6).

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 7.)

Whiffen commenced this action by filing her complaint on July 1, 2015 wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 6, 7.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 10, 11.)

### III. Contentions

Whiffen contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 10 at 9-18.) Specifically, Whiffen argues that the ALJ's residual functional capacity (RFC) determinations is flawed. (*Id.* at 9-16.) In addition, Whiffen argues that the ALJ erred by failing to consult a vocational expert (VE) in step five of the sequential analysis because she had both exertional and nonexertional impairments. (*Id.* at 16-18.) In response, the Commissioner argues that the ALJ's RFC determination was supported by substantial evidence. (Dkt. No. 11 at 5-16.) The Commissioner also contends that the ALJ was not required to obtain the testimony of a VE. (*Id.* at 17-18.)

### IV. Facts

The court adopts the undisputed factual recitations of the parties and

the ALJ. (Dkt. No. 10 at 1-2; Dkt. No. 11 at 2-9; Tr. at 22-29.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-3 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. RFC Determination

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence[2] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

conclusive and must be affirmed upon judicial review.  *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Whiffen makes three arguments contesting the ALJ's RFC determination.  First, she asserts that the ALJ improperly relied on the December 2013 opinion of consultative examiner Kalyani Ganesh.  (Dkt. No. 10 at 10,13-14.)  Second, she contends that the ALJ failed to account for limitations for her neck, right shoulder, and right wrist.  (*Id.* at 10-13.) Finally, Whiffen asserts that the ALJ improperly assessed her credibility. (*Id.* at 14-16.)

### 1.  *Evaluating Medical Opinion Evidence*

Whiffen argues that Dr. Ganesh's opinion is unreliable because it is inconsistent with other medical evidence.  (*Id.* at 10.)  Whiffen maintains that the ALJ should have fully credited the opinions of independent medical examiners (IME) Donald Paarlberg and Steven Hausmann.  (*Id.* at 13.) Whiffen also asserts that Dr. Ganesh's opinion is not valid because the examination occurred almost two years after September 30, 2011, the date Whiffen was last insured.  (*Id.* at 13-14.)

The ALJ found that Whiffen had the RFC to perform medium work,[3] which included lifting no more than fifty pounds at a time and frequently lifting twenty-five pounds, standing and sitting for six hours, and carrying out all other exertional activities continuously. (Tr. at 25.) Additionally, the ALJ determined that Whiffen could follow and perform simple tasks independently, maintain concentration, interact appropriately with co-workers, and handle reasonable levels of stress. (*Id.*) In making his determination, the ALJ gave great weight to the opinion of Dr. Ganesh that Whiffen could perform at least medium work. (*Id.* at 27, 669-72.)

Contrary to Whiffen's contention, Dr. Ganesh's opinion is consistent with the record medical evidence. For one, Dr. Ganesh's examination findings revealed unremarkable results. (*Id.* at 670-71.) For example, Whiffen had normal gait and balance, had full fine motor strength at 5/5 bilaterally with her hand and finger dexterity intact, had normal range of motion in her spine and neck, presented with full strength in her upper and lower extremities, and had normal sensory responses. (*Id.*) Accordingly, Dr. Ganesh's opinion was supported by his examination findings. *See* 20

---

[3] "Medium work involves lifting no more than [fifty] pounds at a time with frequent lifting or carrying of objects weighing up to [twenty-five] pounds." 20 C.F.R. § 404.1567(c).

C.F.R. § 404.14527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.") Furthermore, these findings were consistent with other medical evidence in the record. An MRI of Whiffen's right shoulder during the relevant period produced negative results. (Tr. at 508.) Additionally, x-rays of her wrist in August 2004 revealed normal results. (*Id.* at 206.) Finally, MRIs of Whiffen's back presented mild degenerative changes and an MRI of her neck showed disc protrusion but not herniations. (*Id.* at 213, 436, 441-42.)

The ALJ also did not err when he afforded less weight to the medical opinions of Drs. Paarlberg and Hausmann, neither of whom treated Whiffen. Both doctors opined that Whiffen could not lift more than ten to twenty pounds repetitively. (*Id.* at 203, 213.) Dr. Paarlberg examined Whiffen in July 2005, only a few months after her May 2005 carpal tunnel release surgery. (*Id.* at 200-03.) His opinion is belied by subsequent clinical findings indicating that Whiffen's condition improved after surgery. (*Id.* at 226.) Additionally, as discussed further below, the opinions of both doctors are inconsistent with Whiffen's reported activities of daily living, a normal MRI imaging of her right shoulder, and Dr. Ganesh's opinion. *See*

7

20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion."); (Tr. at 216, 224, 508, 669-79.)

Finally, Dr. Ganesh's opinion remains relevant although he examined Whiffen almost two years after the date of her last insured. As noted above, Dr. Ganesh's opinion is consistent with medical evidence taken during the relevant period. *See McGregor v. Astrue*, 993 F. Supp. 2d 130, 138 n.6 (N.D.N.Y. 2012) (considering a medical opinion rendered after the date that the claimant was last insured when it was consistent with medical evidence from the relevant period). Additionally, as the Commissioner notes, (Dkt. No. 11 at 8-9), Whiffen reported to Dr. Ganesh that her musculoskeletal pain and carpal tunnel syndrome had worsened, (Tr. at 669), and she testified at the hearing that her conditions of chronic pain and nerve damage "probably won't get any better," (*Id.* at 50). Because Dr. Ganesh found that Whiffen could still perform medium work with such symptoms, this opinion reasonably suggests that Whiffen was not disabled during the relevant period when her symptoms were not as severe.

In sum, the ALJ did not err by affording great weight to the opinion of Dr. Ganesh and less weight to the opinions of Drs. Paarlberg and

Hausmann.

### 2. *Limitations Due to Physical Impairments*

Whiffen contends that the ALJ erred by failing to include limitations because of her neck, right shoulder, and right wrist. (Dkt. No. 10 at 10-13.) The Commissioner asserts that the ALJ's decision to omit limitations for these conditions was supported by substantial evidence. (Dkt. No. 11 at 7-9.)

Regarding Whiffen's right wrist, there is evidence in the record that she had negative results in her Phalen test, which diagnoses carpal tunnel syndrome, and her Finkelstein test, which evaluates tendon inflammation, after her May 2005 right wrist surgery. (Tr. at 202.) Additionally, Dr. Hausmann, who the ALJ afforded some weight, found that Whiffen had a normal range of motion in her wrists and no hand weakness. (*Id.* at 226.) In fact, Dr. Hausmann opined that Whiffen was able to return to work without restrictions in her right arm below chest level. (*Id.*) In January 2011, treating physician Carmen Federico evaluated Whiffen, and Whiffen did not complain of any pain. (*Id.* at 301.) In the November 2011 treatment notes of nurse practitioner Kristy Ventura, she opined that Whiffen did not have weakness in her wrist flexors and only mild weakness

9

with wrist extension and finger adduction.  (*Id.* at 604.)  Dr. Ganesh also noted that Whiffen could continuously use her hands to reach, push, and pull.  (*Id.* at 675.)

As to Whiffen's right shoulder, an MRI of this area revealed negative results.  (*Id.* at 508.)  In August 2008, Whiffen went to the emergency room complaining of pain in her right shoulder but left before an examination, suggesting that the pain was not that serious.  (*Id.* at 238-39.)  Although Dr. Hausmann could not fully evaluate Whiffen's shoulder because she wouldn't allow him to move it, he determined that she could return to work.  (*Id.* at 226.)  Dr. Ganesh also opined that Whiffen could continuously reach overhead.  (*Id.* at 675.)

In the January 2011 notes from Whiffen's treating physician Dr. Federico, she noted that Whiffen's neck had full range of motion and was supple.  (*Id.* at 302.)  Additionally, Whiffen did not complain of neck pain to Dr. Paarlberg.  (*Id.* at 200-03.)  Dr. Hausmann noted that Whiffen had a degenerative neck and was at the maximum medical improvement but could return to work.  (*Id.* at 213-14.)

While Whiffen cites evidence to support her right wrist, right shoulder, and neck limitations, (Dkt. No. 10 at 10-13), "whether there is

substantial evidence supporting the appellant's view is not the question," instead, the court must "decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d. Cir. 2013). Here, substantial evidence supports the ALJ's RFC determination, which excluded limitations on Whiffen's neck, right shoulder, and right wrist.

    3.    *Credibility Determination*

Whiffen argues that the ALJ's credibility determination was not supported by substantial evidence. (Dkt. No. 10 at 14-16.) Whiffen first contends that her reported daily activities were consistent with her disability allegations. (*Id.* at 15.) Specifically, Whiffen contests that her part-time work at Wal-Mart amounted to substantial gainful activity. (*Id.* 15-16.) Whiffen also asserts that the ALJ was not sufficiently specific when he noted that her work history "did not enhance her credibility." (*Id.* at 16, (citing Tr. at 27).) The Commissioner responds that: (1) Whiffen's daily activities were in conflict with her disability allegations; (2) work does not have to be substantial to be factored into an ALJ's credibility assessment; and (3) the ALJ specifically found that Whiffen's work history detracted from her credibility. (Dkt. No. 11 at 15-16.)

11

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[] that could reasonably be expected to produce the [symptoms] alleged," he "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted). In performing this analysis, the ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Whiffen alleges that she is disabled because of nerve damage in her back, neck, and right arm and that she suffers from headaches and migraines. (Tr. at 159.) She agrees that she is able to perform some housework and has the ability to drive, but she asserts that these activities are generally consistent with her disability allegations. (Dkt. No. 10 at 15.) Nevertheless, Whiffen's reported ability to perform such activities has a bearing on her credibility. *See* 20 C.F.R. § 404.1529(c); *Cichocki v. Astrue*, 729 F.3d 172, 178 (2d Cir. 2013). Whiffen also admitted that she retained the ability to cook, clean, shop, and care for herself and her children. (Tr. at 216, 224, 670.) In addition, Whiffen held a part-time job at Wal-Mart as a fitting room attendant. (*Id.* at 160.) Although the ALJ found that this job did not amount to substantial gainful activity under step two of the sequential analysis, (*Id.* at 22-23), it is still relevant to Whiffen's credibility in determining her RFC, *see* 20 C.F.R. § 404.1571. Accordingly, Whiffen's daily activities in combination with the medical evidence discussed above support the ALJ's credibility determination.

Finally, the ALJ's finding that Whiffen's "work history did not enhance her credibility" is a sufficiently clear statement to show that this factor weighed against her credibility. (Tr. at 27.) Notably, after this statement,

13

the ALJ cited to Whiffen's summary earnings query, which showed minimal earnings and a sparse work history. (*Id.* at 152.) As such, it was evident that the ALJ weighed Whiffen's work history against her in his credibility determination. *See Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 151 (N.D.N.Y. 2012) (noting that a credibility finding must be sufficiently specific).

## C. VE Testimony

At step five of the sequential analysis, the burden shifts to the Commissioner to produce evidence that an alternative job exists which the claimant is capable of performing. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *see also* 20 C.F.R. § 404.1560(c)(2). To that end, the Commissioner must show a job existing in significant numbers in the national economy that the claimant can perform based on her RFC, age, education, and prior vocational experience. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c)(2).

In making a step five ruling, an ALJ may rely on the Medical–Vocational Guidelines found in 20 C.F.R. pt. 404, subpt. P, app. 2, as long as the claimant's age, education, work experience, and RFC

coincide with the criteria of a rule contained in those Guidelines. *See* 20 C.F.R. § 404.1569; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009). However, when the claimant's nonexertional impairments[4] "significantly limit the range of work permitted by his exertional limitations," the Commissioner "must introduce the testimony of a [VE] (or other similar evidence) that jobs exist in the economy which [the] claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603, 605 (2d Cir. 1986) (internal quotation marks and citation omitted); *see Zabala v. Astrue*, 595 F.3d 402, 410-11 (2d Cir. 2010). "A nonexertional impairment significantly limits [the] claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows [the] claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala*, 595 F.3d at 410-11 (internal quotation marks and citation omitted).

Here, the ALJ found that Whiffen had the RFC to perform medium work without limitations. (Tr. at 25-28.) As noted above, *see* Part VI.A, the court agrees that this RFC determination is supported by substantial

---

[4] Nonexertional impairments are "[l]imitations or restrictions which affect [the claimant's] ability to meet the demands of the jobs other than the strength demands." 20 C.F.R. § 404.1569a(a).

evidence. Because the ALJ did not find that Whiffen had any nonexertional impairments which would restrict her ability to perform medium work, he was not required to elicit VE testimony. *See Zabala*, 595 F.3d at 410; *Bapp*, 802 F.2d at 603, 605. Rather, the ALJ correctly relied on the Guidelines to support his finding of no disability at step five of the sequential analysis. *See* 20 C.F.R. § 404.1569.

## D. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Whiffen's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 7, 2016
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge